EUGENE G. IREDALE: SBN 75292
JULIA YOO: SBN 231163
GRACE JUN: SBN 287973
IREDALE & YOO, APC
105 West F Street, Fourth Floor
San Diego, CA 92101-6036
TEL: (619) 233-1525
FAX: (619) 233-3221
Attorneys for Plaintiff Miguel Villa

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL VILLA,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO, RUDY PERAZA in his individual capacity, and DOES 1-100<br><br>Defendants. | CASE NO. **'20 CV0537 CAB NLS**<br><br>**COMPLAINT**<br><br>**(1) Excessive Force (42 U.S.C. §1983)**<br>**(2) _Monell_ (42 U.S.C. §1983)**<br>**(3) Assault**<br>**(4) Battery**<br>**(5) Negligence**<br>**(6) Intentional Infliction of Emotional Distress**<br>**(7) Violation of Cal. Civ. Code §52.1 (Bane Act)**<br><br>**JURY TRIAL DEMANDED** |

COMES NOW, MIGUEL VILLA, by his attorneys of record, to allege and complain as follows:

## I.   INTRODUCTION

On March 14, 2019, Miguel Villa was brought into the Central Jail for booking. Defendant Rudy Peraza punched and beat Mr. Villa while Mr. Villa was in restraints. Peraza bent Mr. Villa's fingers. Mr. Villa had posed no threat to anyone when Peraza attacked him. Peraza had earlier attacked another inmate who was also in restraints by pulling the inmate by this chain and tasering him.

## II.   JURISDICTION AND PARTIES

1.     Jurisdiction is proper in the United States District Court for the Southern District of California pursuant to 28 U.S.C. §1331 and 28 U.S.C. § 1343(3) and (4), *et. seq*.

2.     Venue is proper in the Southern District of California because the acts or omissions which form the basis of the Plaintiffs' claims occurred in San Diego, California, within the Southern District.

3.     At all times relevant to this complaint, decedent Miguel Villa was an individual residing in San Diego County, California.

4.     Plaintiff has properly complied with the California Tort Claims Act. Plaintiffs' claims were submitted on September 4, 2019. The County of San Diego acknowledged receipt of Mr. Villa's claim on September 13, 2019, but failed to issue a subsequent letter.  The claim is deemed to be denied by operation of law.

5.     Defendant County of San Diego is a public entity, duly organized and existing under the laws of the State of California. Under its authority, Defendant County of San Diego operates and manages the San Diego Central Jail, and is, and was at all relevant times mentioned herein, responsible for the actions and/or inactions and the policies, procedures and practices/customs of the Central Jail, and its respective employees and/or agents.

6.     Plaintiffs are truly ignorant of the true names and capacities of Does 1 through 100, inclusive, and/or is truly ignorant of the facts giving rise to their liability and will amend this complaint once their identities have been ascertained as well as the facts giving rise to their liability.

7.     These defendants were agents, servants and employees of each other of the other named defendants and were acting at all times within the full course and scope of their agency and employment, with the full knowledge and consent, either expressed or implied, of their principal and/or employer and each of the other named defendants and each of the defendants had approved or ratified the actions

of the other defendants thereby making the currently named defendants herein liable for the acts and/or omissions of their agents, servants and/or employees.

### III.  FACTS

8.  Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same herein.

9.  On March 14, 2019, Miguel Villa was brought into the Central Jail for booking.

10.  Defendant Rudy Peraza was a Sheriff's deputy working at the Jail.

11.  Peraza punched and beat Mr. Villa while Mr. Villa was in restraints.

12.  Peraza bent Mr. Villa's fingers.

13.  Mr. Villa had posed no threat to anyone when Peraza attacked him.

14.  Mr. Villa was unarmed and helpless.

15.  No other deputy intervened to help when Peraza attacked him.

16.  Prior to this attack on Mr. Villa, Defendant Rudy Peraza had attacked another inmate without any justification.

17.  In December of 2018, Peraza attacked an inmate named Anthony Bolden.  Peraza tasered Mr. Bolden and attempted to pull Mr. Bolden by his metal waist chain through a tray slot.  At the time of this attack, Mr. Bolden was in chains, in his cell, presenting no threat to Peraza or anyone else.

18.  Defendant County was aware of the following cases where deputies were alleged to have used excessive force, but took no action:

   a. In *Hayes v. County of San Diego*, 736 F.3d 1223 (9th Cir. 2013), where deputies were summoned for a welfare check and used excessive force on a man.

   b. In *Kendrick v. County of San Diego*, 2018 WL 1316618, case no. 15-cv-2615-GPC (AGS), deputies shot and killed a suicidal man.

   c.  In *Maxwell v. County of San Diego*, 708 F.3d 1075 (2013), a Sheriff's

deputy shot his wife in the jaw with his service pistol and responding deputies prevented the ambulance holding the wife from leaving, which delayed her medical care and led to her death.

d. In *S.B. v. County of San Diego*, 864 F.3d 1010, 1014 (2017), the Ninth Circuit held a jury could conclude that deputies' used unreasonable force when they shot and killed a mentally ill man.

e. In *Mendoza v. County of San Diego*, No. 17CV1349 W (NLS), 2018 WL 1185230, at *1 (S.D. Cal. Mar. 7, 2018), a deputy drove his patrol car into plaintiff, throwing plaintiff in the air.

f. In *Estate of Tommy Tucker v. County of San Diego*, 11-CV-0356-JLS-WVG (S.D. Cal. 2011), decedent Tommy Tucker was a mentally ill inmate in the San Diego Central Jail who was given conflicting commands by deputies during lockdown.  After Tommy complied with one deputy's command, three deputies sprayed Tommy with OC spray; one applied a carotid hold on Tommy from behind; five deputies rushed at Tommy, "swarming" him; and then all deputies piled on top of him to apply mechanical restraints.  One deputy applied a "spit sock" over Tommy's head, which was wet from the OC spray, as he lay face down in a prone position.  Tommy Tucker suffered anoxic encephalopathy (brain death) due to prolonged hypoxia and cardiac arrest.

g. In *A.B. v. County of San Diego*, case no. 18-CV-01541-MMA-LL (S.D. Cal. 2018), on October 14, 2017, Sheriff's deputies approached Kristopher Birtcher, a mentally impaired man.  Deputies repeatedly Tased Mr. Birtcher; struck and beat him; forced him to lay prone on the ground, face down, in restraints as multiples deputies pressed down on him; used a spit sock to cover his face; and ultimately killed Mr. Birtcher.

h. In *Washington v. County of San Diego*, 02-CV-0143-LAB-JMA (S.D. Cal. 2002), Marshawn Washington, an inmate by George Bailey, was killed by

- 4

deputies.  Mr. Washington had complained regarding a deputy's conduct. Deputies placed a spit sock over Mr. Washington's head; attempted to force him in a "Pro-straint Chair"; one deputy applied a carotid restraint hold to Mr. Washington's neck; and then deputies placed Mr. Washington face down on the ground and hog-tied him.  Mr. Washington was forced on his belly with his wrists and ankles cuffed together behind his back.  He said he could not breathe.  Witnesses heard him choke and gag.  Mr. Washington eventually suffocated to death.

i.  In *Marcial Torres v. County of San Diego*, case no. 15-CV-01151-CAB-BLM (S.D. Cal. 2015), a Sheriff's deputy repeatedly tased Marcial Torres who was unarmed. After repeated Tases, Marcial Torres lay face down on the ground in handcuffs.  He stopped breathing and turned blue in the face. No deputy attempted to render any aid to Mr. Torres.  Based on the records and testimony of Vista Fire Department paramedics, Mr. Torres had been without a pulse anywhere from 12 to 20 minutes.  Because of the length of time Mr. Torres had gone without a pulse, his body had shut down.  Oxygen had stopped circulating to his brain, causing an anoxic brain injury.  While comatose in the hospital, doctors amputated Mr. Torres' legs and fingers due to sepsis.  While Mr. Torres regained consciousness, the anoxic brain injury affected his cognitive function.  The County settled with plaintiff for $3,000,000.

j.  In *Jimenez v. County of San Diego*, case no. 15-cv-02299-L-JLB, the County settled a claim of excessive force for $500,000 when a deputy beat a man while he was handcuffed.

k.  In *Pitt v. County of San Diego*, Case No. 3:16-cv-00515, the County settled a false arrest claim for $220,000 settlement for false arrest.

l.  In *Bush v. County of San Diego*, Case No. 15-cv-00686-L-JMA (S.D. Cal. 2016) the County settled this case for $225,000 after deputies shot the family

- 5

dog and plaintiffs established liability by winning a motion for summary judgment.

m. In *Johnson v. County of San Diego*, Case No. 14-cv-616-LAB (S.D. Cal. Feb. 1, 2016), a unanimous jury awarded total damages of $600,000 in an excessive force and false arrest case.

n. In *Antonio Martinez v. County of San Diego*, 37-2014-00013656-CU-CR-NC, in 2012, the County settled an excessive force case for $1,000,000 after a San Diego County Sheriff's deputy beat and wrongfully detained a man with down syndrome.

o. In *Silva v. County of San Diego*, 18-cv-02282-L-MSB, deputies beat, Tased and squeezed the life out of a mentally ill patient who had committed no crimes.  Deputies killed Mr. Silva, who was experiencing a psychotic break as a result of the Jail refusing to provide Mr. Silva any medical care including any medication.

p. In *Narciso v. County of San Diego*, 20-CV-0116-L-MSB, the plaintiff who was mentally impaired had both of her arms broken by deputies.  The plaintiff had committed no crimes.  The sheriffs had been called to provide help for her own safety because Plaintiff was running out into traffic.  At the time deputies broke her arms in November 27, 2018, Ms. Narciso was in handcuffs and presented no threat to anyone.

19.    Despite the specific awareness of the deficiency of their policies, Defendant County of San Diego and its officials continued to maintain the following unconstitutional customs, practices, and policies:

a. Using excessive force, including deadly force on unarmed person who do not pose a risk of imminent death or serious bodily injury to others;

b. Providing inadequate training regarding the use of force, including deadly force;

- 6

c. Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling misconduct by County Sheriff's deputies, including the misconduct of the Defendant-deputy in this case;

d. Announcing that unjustified uses of force are "within policy," even when they are later determined in court to be unconstitutional;

e. Even where in-custody deaths are determined in court to be unconstitutional, refusing to discipline, terminate, or retrain the deputies involved;

f. Maintaining a policy of inaction and an attitude of indifference towards soaring numbers of in-custody deaths, including by failing to discipline, retrain, investigate, terminate, and recommend deputies for criminal prosecution who participate in the beating of unarmed, nonviolent, compliant, and/or potentially mentally impaired people.

20.    San Diego County officials were aware of the systemic problems with preventable deaths related to the use of force by Sheriff's deputies, and other misconduct by Sheriff's employees and staff, including medical staff, but took no action to prevent further Constitutional violations.

### IV.  FIRST CAUSE OF ACTION
**Excessive Force and Failure to Intercede (42 U.S.C. §1983)**
**[By Miguel Villa Against Defendants Peraza and Does]**

21.    Plaintiff realleges all prior paragraphs of this complaint and incorporates the same herein by this reference.

22.    Defendants committed wrongful acts which proximately caused Miguel Villa great bodily injury.

23.    Defendant Peraza punched and beat Mr. Villa while Mr. Villa was in restraints.

24.    Peraza bent Mr. Villa's fingers.

25.    Mr. Villa had posed no threat to anyone when Peraza attacked him.

- 7

26. Mr. Villa was unarmed and helpless.

27. No other deputy intervened to help when Peraza attacked him.

28. As a direct and proximate result of the unlawful acts, and recklessness described above, Mr. Villa suffered great bodily injuries. He is entitled to general, compensatory, and punitive damages in an amount to be proven at trial.

## V.   SECOND CAUSE OF ACTION
### *Monell* (42 U.S.C. §1983)
### [By Miguel Villa Against Defendant County of San Diego]

29. Plaintiff realleges all prior paragraphs of this complaint and incorporates the same herein by this reference.

30. At all times herein mentioned, the County, with deliberate indifference, and conscious and reckless disregard to the safety, security and constitutional and statutory rights of Plaintiff and others similarly situated, including the right to be free from excessive force, maintained, enforced, tolerated, ratified, permitted, acquiesced to, promulgated, and applied, among others, the following policies, practices and customs:

a. Failing to adequately train, supervise, and control deputies in uses of force, particularly regarding handling vulnerable, impaired, and/or incapacitated individuals;

b. Failing to set up systems to prevent abuse by deputies including the failure to properly investigate timely and, when appropriate, discipline officers' use of force;

c. Failing to terminate or otherwise discipline deputies who abuse their authority;

d. Failing to arrest deputies who commit crimes while on patrol and referring them for prosecution;

e. Condoning and encouraging deputies in the belief that they can violate the rights of persons such as Plaintiff with impunity, on video recordings, knowing that their criminal and thuggish conduct will not

                        adversely affect their opportunities for retention, promotion, and other employment benefits; and

       f.  Encouraging deputies to treat people such as Plaintiff as criminals rather than detainees.

       g.  The foregoing list is illustrative and not exhaustive.

31.    The County's practice and custom of failing to properly hire, train, supervise, monitor, discipline, counsel, transfer, and control deputy sheriffs, the code of silence, and the encouragement of unreasonable detentions and wrongful arrests are interrelated and exacerbate the effects on each other to institutionalize police lying and immunize officers from discipline.

32.    Additionally, the involvement in, and ratification of, the unconstitutional actions of the Defendants by municipal supervisors and policymakers further establishes that these acts were part of a widespread municipal policy, practice and custom.

33.    The County was specifically aware that in December of 2018, this Defendant, Peraza, had unreasonably and maliciously attacked Anthony Bolden. Peraza tasered Mr. Bolden and attempted to pull Mr. Bolden by his metal waist chain through a tray slot.  At the time of this attack, Mr. Bolden was in chains, in his cell, presenting no threat to Peraza or anyone else.  Despite the County's awareness of Peraza's prior use of unreasonable and excessive force against a restrained detainee, County officials took no action to supervise, counsel, discipline, or further train Defendant Peraza.

34.    The aforementioned policies, practices and customs, separately and together, proximately caused injury to Plaintiff because Defendant Peraza knew that his misconduct, even though recorded, would go unchallenged by supervisors and fellow officers. These interrelated policies, practices and customs, as set forth above, both individually and together, were maintained and implemented with deliberate indifference, and encouraged Defendants to commit the wrongful acts

against Plaintiff and therefore acted as a moving force and were, separately and together, direct and proximate causes of the constitutional deprivation and injuries to Plaintiff.

35.    As a direct and proximate result of the foregoing, Plaintiff sustained injury and damage as alleged above.

## VI.  THIRD CAUSE OF ACTION
### Assault
**[By Miguel Villa against Defendant Peraza and County of San Diego]**

36.    Plaintiff realleges all prior paragraphs of this complaint and incorporates the same herein by this reference.

37.    Defendant Peraza assaulted Plaintiff without justification or probable cause.

38.    The County is responsible for the acts of its employees and agents, including Defendant Peraza, under the theory of *respondeat superior*.

39.    As a direct and proximate result of the foregoing, Plaintiff sustained injury and damage as alleged above.

## VII. FOURTH CAUSE OF ACTION
### Battery
**[By Miguel Villa against Defendant Peraza and County of San Diego]**

40.    Plaintiff realleges all prior paragraphs of this complaint and incorporates the same herein by this reference.

41.    Defendant Peraza battered Plaintiff without justification or probable cause.

42.    The County is responsible for the acts of its employees and agents, including Defendant Peraza, under the theory of *respondeat superior*.

43.    As a direct and proximate result of the foregoing, Plaintiff sustained injury and damage as alleged above.

## VIII.  FIFTH CAUSE OF ACTION
### (Negligence)
**[By Miguel Villa against All Defendants]**

- 10

44.     Plaintiff realleges all prior paragraphs of this complaint and incorporates the same herein by this reference.

45.     Defendants had a duty to Mr. Villa to act with ordinary care and prudence so as not to cause harm or injury to him.

46.     Defendant Peraza improperly, negligently, wrongfully, and recklessly used excessive and unreasonable force against Mr. Villa.  Doe Defendants improperly, negligently, wrongfully, and recklessly failed to intercede when Peraza attacked Mr. Villa when they had opportunity to do so.

47.     The officers should have known that Peraza's use of excessive force would cause Mr. Villa to suffer great bodily harm and emotional distress.

48.     By engaging in the acts alleged herein, Defendants failed to act with ordinary care and breached their duty of care owed to Miguel Villa.

49.     The County is responsible for the acts of their employees and agents under the theory of *respondeat superior*.

50.     Plaintiff is informed and believes that Defendants County maintained policies, practices and procedures that allowed for and encouraged the denial of care which ultimately caused the great bodily injury of Mr. Villa.  These policies, practices and procedures include without limitation Defendants' training procedures and practices with respect to supervision of the officers and policies and procedures with regard to the use of force.

51.     By engaging in the acts alleged herein, all Defendants failed to act with ordinary care and breached their duty of care owed to plaintiff.

52.     As a direct and proximate result of the Defendants' negligent conduct as herein described, Miguel Villa suffered physically and mentally in the amount to be determined at the time of trial.

53.     As a further proximate result of the Defendants' negligent conduct, Mr. Villa sustained great bodily injury.

54. As a further proximate result of the Defendants' negligent conduct, Plaintiff has suffered great emotional and mental harm in the amount to be determined at the time of trial.

55. The conduct of the individual Defendants also amounts to oppression, fraud or malice within the meaning of Civil Code Section 3294 et seq. and punitive damages should be assessed against each defendant for the purpose of punishment and for the sake of example.

## IX.  SIXTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress
### [By Miguel Villa against All Defendants]

56. Plaintiff realleges all prior paragraphs of this complaint and incorporates the same herein by this reference.

57. Defendants intended to cause Miguel Villa emotional distress, and acted with reckless disregard of the probability he would suffer emotional distress.

58. The conduct of Peraza that caused Mr. Villa's physical injuries constitutes extreme and outrageous conduct.  By engaging in these acts as alleged herein, Peraza and Does acted willfully and/or in reckless disregard of the probability of causing Mr. Villa to suffer emotional distress.

59. The actions of Peraza in punching a helpless man in handcuffs and Does in allowing the force to occur amount to extreme and outrageous conduct that exceeds all bounds tolerated by a civilized society.

60. The actions of these defendants were a substantial factor in causing Mr. Villa severe emotional distress.

61. The County is responsible for the acts of its employees and agents, including Defendant Peraza, under the theory of *respondeat superior*.

62. As a direct and proximate result of the foregoing, Plaintiff sustained injury and damage as alleged herein.

## X.   SEVENTH CAUSE OF ACTION

### Violation of Cal. Civ. Code § 52.1
### [By Miguel Villa against All Defendants]

63.   Plaintiff realleges all prior paragraphs of this complaint and incorporates the same herein by this reference.

64.   Defendant Peraza and DOES 1-100 interfered by threats, intimidation, or coercion, with the exercise or enjoyment by Miguel Villa of rights secured by the Constitution or laws of the United States.

65.   The Fourth and Fourteenth Amendments to the U.S. Constitution, and Article I, section 13 of the California Constitution, guarantee (a) an individual's right to be free from excessive force.

66.   California Civil Code section 43 confers a right to be secure in one's bodily integrity from assault and excessive force.  By engaging in the acts alleged above, Defendants denied those rights to Plaintiff, thus giving rise to claims for damages pursuant to California Civil Code section 52.1.

67.   As a direct and proximate result of Defendants' actions, as alleged herein, Plaintiff was injured as set forth above and is entitled to damages, including compensatory and punitive damages, in an amount to be proven at trial and in excess of the jurisdictional amount required by this Court.

68.   In conducting himself as alleged herein, Defendants were acting within the course and scope of their employment with Defendant County. Thus, the County is responsible for Defendants' actions.

69.   In doing the foregoing wrongful acts, Defendants acted in reckless and callous disregard for Plaintiff's constitutional rights. The wrongful acts, and each of them, were willful, oppressive, fraudulent and malicious, thus warranting the imposition of punitive damages against each individual Defendant in an amount adequate to punish the wrongdoers and deter future misconduct.

- 13

**WHEREFORE**, Plaintiff prays as follows:

1.     For general and special damages according to proof at the time of trial;

2.     For attorneys' fees and costs of suit and interest incurred herein;

3.     For punitive damages; and

4.     Any other relief this court deems just and proper.

## DEMAND FOR A JURY TRIAL

Pursuant to Rule 38 of the Federal Rues of Civil Procedure and the Seventh Amendment to the Constitution, Plaintiff hereby demands a jury trial of this action.

Respectfully Submitted,

**IREDALE AND YOO, APC**

Dated:  March 20, 2020

s/ *Julia Yoo*
EUGENE IREDALE
JULIA YOO
GRACE JUN
Attorneys for Plaintiff
MIGUEL VILLA

- 14