UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL VILLA,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO; DEPUTY RUDY PERAZA; and DOES 1-100,<br><br>　　　　　　　　　　Defendants. | Case No.: 20cv537-CAB (NLS)<br><br>**ORDER:**<br><br>**(1) REGARDING JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE NO. 1;**<br><br>**(2) GRANTING JOINT MOTION TO AMEND SCHEDULING ORDER**<br><br>**[ECF Nos. 29, 31]** |

## JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE NO. 1

Before the Court is the parties' Joint Motion for Determination of Discovery Dispute No. 1, wherein Plaintiff seeks to compel Defendants to produce certain documents in response to his Requests for Production Nos. 9-11. ECF No. 29. After due consideration and for the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion to compel.

### I. BACKGROUND

In the operative complaint, Plaintiff alleges that Defendant Rudy Peraza ("Peraza") unlawfully physically attacked him while he was in restraints at San Diego Central Jail. After an altercation with his girlfriend, Plaintiff was brought into the jail, where Officer

Peraza was working at the time. ECF No. 13 at ¶¶ 9, 13. Plaintiff alleges that he was emotionally distraught and evaluated for mental health screening. *Id.* at ¶¶ 11-12. Plaintiff alleges that Officer Peraza walked up to him and proceeded to punch and beat him while he was in restraints. *Id.* at ¶¶ 16-17. As a result of the attack, Plaintiff alleges that he suffered serious injuries including lacerations and bruises. *Id.* at ¶¶ 21-22. Plaintiff brings a cause of action under 42 U.S.C. § 1983 for excessive force against Officer Peraza, as well as several state law causes of action.

Plaintiff also brings a cause of action against the County of San Diego ("County") for *Monell* liability. Plaintiff alleges that the County maintained a *de facto* policy of allowing its deputies to use force on citizens who are in restraints, as evidenced by complaints against them over the years. *Id.* at ¶¶ 23-40. Plaintiff also alleges that the County failed to properly train its deputies on the amount of force that is constitutionally permissible. *Id.* at ¶ 32.

At issue in this instant motion are three requests for production that were propounded by Plaintiff to Defendants, seeking Internal Affairs files, personnel files, and any complaints of excessive force related to Officer Peraza. ECF No. 29.

## II.  DISCUSSION

The following three requests for production are at issue in this dispute:

**Request for Production No. 9**: All DOCUMENTS, ELECTRONICALLY STORED INFORMATION, and tangible things reflecting any investigation by San Diego County Sheriff's Department Internal Affairs of Defendant Rudy Peraza.

**Request for Production No. 10**: The personnel file of Defendant Rudy Peraza.

**Request for Production No. 11**: Any complaint of excessive use of force or other misconduct made by any civilian, inmate, or other individual regarding Defendant Rudy Peraza.

ECF No. 29 at 1-11. Documents responsive to these requests have been listed by Defendants on their privilege log as follows:

- 2019 Internal Affairs records related to Plaintiff Villa and the incident at issue in this lawsuit (CSDP000001-000147) (including reports, photos, interviews, hearings, and videos);

- 2016 Internal Affairs records unrelated to Plaintiff (CSDP000148-187);

- 2017 Internal Affairs records unrelated to Plaintiff (CSDP000188-205);

- Officer Peraza's personnel files (CSDP 206-826)

ECF No. 29-1 at 3-4.  Defendants raise issues of privilege, privacy, and relevance related to these entries in the privilege log.

### A.     Official Information Privilege

First, Defendants argue that the official information privilege protects the documents in the privilege log from disclosure, and submit two declarations in support of their position.

Federal law regarding privilege applies to federal question cases.  Fed. R. Evid. 501; *see Admiral Ins. Co. v. U.S. Dist. Court*, 881 F.2d 1486, 1492 (9th Cir. 1989).  Federal common law recognizes a qualified privilege for "official information." *Kerr v. U.S. Dist. Court for Northern Dist.*, 511 F.2d 192, 198 (9th Cir. 1975).  The official information privilege is subject to the competing interests of the requesting party, and is "subject to disclosure especially where protective measures are taken." *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033 (9th Cir. 1990).  Courts embrace "a balancing approach that is moderately pre-weighted in favor of disclosure." *Kelly v. City of San Jose*, 114 F.R.D. 653, 661 (N.D. Cal. 1987) (ordering disclosure of law enforcement documents subject to a protective order to a plaintiff in a § 1983 action).

The party asserting the official information privilege must invoke it by name and make a substantial threshold showing of privilege. *Id.* at 669.  To make such a showing, a "party must submit, at the time it files and serves its response to the discovery request, a declaration or affidavit, under oath or subject to the penalty of perjury, from the head of the department which has control over the matter." *Miller v. Pancucci*, 141 F.R.D. 292, 300 (C.D. Cal. 1992) (citing *Kerr*, 511 F.2d at 198).  The affidavit must include: (1) an

affirmation that the agency generated or collected the material in issue and has in fact maintained its confidentiality, (2) a statement that the official has personally reviewed the material in question, (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer, (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests, (5) and a projection of how much harm would be done to the threatened interests if the disclosure were made. *Kelly*, 114 F.R.D. at 670.

A "general assertion" that a law enforcement organization's internal investigatory system "'would be harmed by disclosure of the documents is insufficient' to meet the threshold test for invoking the official information privilege." *Soto v. City of Concord*, 162 F.R.D. 603, 614 (N.D. Cal. 1995) (quoting *Chism v. County of San Bernardino*, 159 F.R.D. 531, 534-535 (C.D. Cal. 1994)). Similarly, a "general claim of harm to the 'public interest' is insufficient to overcome the burden placed on the party seeking to shield material from disclosure." *Soto*, 162 F.R.D. at 614; *Miller*, 141 F.R.D. at 300-301; *Kelly*, 114 F.R.D. at 672. The party resisting discovery "must specifically describe how disclosure of the requested documents in that particular case would be harmful." *Soto*, 162 F.R.D. at 614; *Miller*, 141, F.R.D. at 300-301.

In support of their assertion of this privilege, Defendants have submitted two affidavits. First, Defendants submit the declaration of Michael J. Blevins, a Captain assigned to San Diego Sheriff's Department's Personnel Division, to support their assertion of this privilege as to Officer Peraza's personnel files. ECF No. 29-2. Second, Defendants submit the declaration of Kenneth W. Jones, a Lieutenant assigned to the San Diego Sheriff's Department's Internal Affairs Division, to support their assertion of this privilege as to Officer Peraza's Internal Affairs files. ECF No. 29-3. Plaintiff agrees that Defendants have met the first and second factors set out in *Kelly*, but disputes that the remaining factors have been satisfied.

Captain Blevins states that "[c]riticism, counseling, changes of assignment, transfers, and even discipline of deputies can be used to improve deputies' performances and the quality of law enforcement services" and that "[c]onsistency and confidence in the Department's internal processes enhances critical and candid assessments and is vital to deputies, their superiors and the public." ECF No. 29-2 at ¶ 9. He warns that public disclosure of such information may cause supervisors to "begin to withhold critical feedback and frank evaluation." *Id.* In addition, Captain Blevins states that deputies themselves should make full disclosures of "[p]ersonal data, medical and employment history, and other private information" for their personnel files and if they were afraid such information might end up being released outside of the Sheriff's department, they may withhold information, "harming the efficient payroll, medical, and insurance processes of the Department, and harming emergency processes if a deputy or family member ever became physically injured." *Id.* at ¶ 10. Captain Blevins asserts that disclosure of these personnel records "even when made pursuant to a protective order, will also erode the integrity and security of such records, negatively affect morale of many Department employees, consume inordinate time, expense, and resources, and frustrate the legitimate specific purposes of compiling and maintaining such records." *Id.*

Lieutenant Jones states that for Internal Affairs records, "[d]isclosure of certain information about law enforcement personnel can jeopardize their safety and the safety of their families, and subject them to harassment or intimidation." ECF No. 29-3 at ¶ 4. He also points to the similar concerns as Captain Blevins regarding the need for open criticism. *Id.* at ¶ 5. He states that "[d]isclosure and dissemination of the confidential records that Internal Affairs keeps may discourage individuals from providing information; diminish the confidentiality of others who have provided information to the Department; disrupt the vital, day to day operations of the department; divert department personnel from their regular duties; erode the integrity and security of Internal Affairs records; affect morale of departmental employees; consume inordinate time, expense, and resources; and frustrate the legitimate purpose of compiling and maintaining such

records" and "could erode the integrity and security of the records." *Id.* at ¶¶ 6-7. Lieutenant Jones does not mention the effect of a protective order.

The court finds that these statements, and the others included in the declarations, lack case-specific information and amount to only general assertions that does not meet the third factor under *Kelly*. *See Soto*, 162 F.R.D. at 621; *Miller*, 141 F.R.D. at 300-01; *Kelly*, 114 F.R.D. at 672. The identified interests and harms are ones that apply to disclosure of any Internal Affairs or personnel files. There is nothing specific as to the information in any of Officer Peraza's specific files.

Further, while Defendants cursorily mention a protective order in Captain Jones's declaration, stating that harm would result "even when made pursuant to a protective order," they do not explain why this is the case. The use of a carefully drafted protective order is a tool often employed by courts in these types of cases and would substantially reduce Defendants' confidentiality concerns. *See Soto*, 162 F.R.D. at 614. In addition to the protective order already entered in this case, further redaction of irrelevant information could further protect confidentiality concerns.

The only case specific argument Defendants make is that Officer Peraza testified in a declaration that Plaintiff made the following statement to him: "Just know I'm a South Sider. When one jumps we all jump. I will find you on the outside!" ECF No. 29-4 at ¶ 4. Plaintiff objects to this declaration as untimely because it was not submitted at the time that the privilege was raised. Regardless of the timeliness issue, the Court does not find that this identifies a specific harm that cannot be cured with an appropriate protective order, where personal identifying information about Officer Peraza can be redacted. In addition, further protection may be provided by requiring the documents to be disclosed only to counsel.

Thus, the Court finds that, under *Kelly*, Defendants did not make a threshold showing of the official information privilege. Because they did not meet this requirement, the Court need not apply the balancing test from *Kelly* to determine whether disclosure of documents should be permitted or whether disclosure would harm

significant governmental interests. *See Kelly*, 114 F.R.D. 663. The Court overrules Defendants' objections based on the official information privilege.

### B. Privacy

Defendants argue the requests would also invade Officer Peraza's privacy rights. Defendants correctly acknowledge that state law regarding privacy under *Pitchess* does not apply but rather federal law applies. Fed. R. Evid. 501; *see Admiral Ins. Co.*, 881 F.2d at 1492. However, they argue that courts have recognized a federal right to privacy, that the state guidelines provide some guidance to the courts, and that Officer Peraza's records should be maintained in a consistent manner with his reasonable expectations under state law.

"The contention that the doctrine of governmental privilege precludes disclosure of personnel records, whether or not established in California state courts, is not the law of this circuit." *Green v. Baca*, 226 F.R.D. 624, 643-644 (C.D. Cal. 2005). Therefore, the Court does not need to go through the procedures outlined in *Pitchess* in order to rule upon the privacy objection. The Court does recognize that there is a federal privacy right but this right can be protected despite disclosure of relevant documents with a carefully crafted protective order, with additional protections and solely for use in connection with the prosecution of this civil case. Thus, the Court overrules Defendants' objections based on privacy in part, finding that such interests can be sufficiently guarded by a protective order.

### C. Relevance of Individual Requests and Documents

Having ruled upon the privilege and privacy objections above, the Court will consider the relevance of the documents at issue.

Federal Rule of Civil Procedure 26 permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the

proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Information need not be admissible to be discoverable. *Id.*

"The 2015 amendments to Rule 26(b)(1) emphasize the need to impose 'reasonable limits on discovery through increased reliance on the common-sense concept of proportionality.'" *Roberts v. Clark Cty. Sch. Dist.*, 312 F.R.D. 594, 603 (D. Nev. 2016) (internal citation omitted). The fundamental principle of amended Rule 26(b)(1) is "that lawyers must size and shape their discovery requests to the requisites of a case." *Id.* Both discovery and Rule 26 are intended to provide parties with "efficient access to what is needed to prove a claim or defense, but eliminate unnecessary or wasteful discovery." *Id.*

The Court has broad discretion in determining relevancy for discovery purposes. *Surfvivor Media Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005); *see U.S. Fidelity and Guar. Co. v. Lee Investments L.L.C.*, 641 F.3d 1126, 1136 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and [their] rulings will not be overturned in the absence of a clear abuse of discretion.") (internal quotation and citations omitted). To the extent that the discovery sought is "unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive," the court is directed to limit the scope of the request. Fed. R. Civ. P. 26(b)(2). Limits should also be imposed where the burden or expense outweighs the likely benefits. *Id.* How and when to so limit discovery, or to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," remains in the court's discretion. Fed. R. Civ. P. 26(c)(1).

Plaintiff first argues that evidence of prior complaints of excessive force against a police officer are relevant and admissible to a *Monell* claim. ECF No. 29 at 13. The Court agrees. Thus, Defendants are ordered to produce the documents related to the incident between Plaintiff Villa and Officer Peraza (CSDP000001-000147).

As for the other Internal Affairs files, Defendants argue that they are not related to any complaints of excessive force. Defendants represent to Plaintiff, and the Court, that

1  they are instead related to two reports regarding conditions of confinement issues and one
2  related to an assault by another inmate (not Officer Peraza) on the complainant.  ECF No.
3  29 at 26.  Nevertheless, Plaintiff still argues that these files are relevant because they may
4  be probative of the County's failure to supervise or discipline Officer Peraza or Officer
5  Peraza's credibility.  ECF No. 29 at 16.  However, Plaintiff's *Monell* allegations do not
6  reach so far.  Throughout the complaint, Plaintiff alleges that the County permitted its
7  officer to use excessive force on citizens who were in restraints or did not pose a threat.
8  ECF No. 13 at ¶¶ 23-25.  Plaintiff alleges that the County failed to supervise, discipline
9  and train its deputies who "used excessive force" on citizens.  *Id.* at ¶¶ 26-36.  The
10 alleged unconstitutional policies all involve use of unnecessary force.  *Id.* at ¶ 37.  Thus,
11 the Court finds that the other Internal Affairs files (CSDP000148-205) that are not related
12 to excessive force used by Officer Peraza do not meet the relevancy standard under Rule
13 26, and will not order their production.

14      Plaintiff also argues that information contained in Officer Peraza's personnel files,
15 including performance evaluations, appraisals, background investigations, evaluations,
16 and training are relevant to the *Monell* claim as well because they go toward his fitness
17 for duty.  ECF No. 29 at 14-15.  Defendants argue that the personnel files are not relevant
18 because they do not contain discussion of any excessive force incidents.  *Id.* at 26.  The
19 Court agrees with Plaintiff.  Even without explicit discussion of any excessive force
20 incidents, information contained in Officer Peraza's personnel files going to his
21 background may provide relevant insight into his actions in Plaintiff's specific incident.
22 As such, this court has found such files relevant in prior cases.  *See Daniels v. Cty. of San*
23 *Diego*, No. 05CV1130-WQH (NLS), 2006 WL 8455214, at *3 (S.D. Cal. May 30, 2006)
24 ("Personnel files which include performance evaluations, promotions, training records,
25 interviews, employee orientation and employment applications are generally considered
26 relevant to an excessive force claim."); *see also Nehad v. Browder*, No. 15-CV-1386
27 WQH NLS, 2016 WL 2745411, at *2 (S.D. Cal. May 10, 2016); *Estate of Kosakoff by*
28 *Kosakoff v. City of San Diego*, No. 08CV1819 IEG (NLS), 2009 WL 10672901, at *2

(S.D. Cal. Nov. 10, 2009).

Any risk of production of the documents discussed above can also be tempered by redaction of any information contained within them that are private and irrelevant to the case. Plaintiff has already agreed that information such as social security numbers, driver's license information, license plate numbers, addresses, health information, and financial information regarding Officer Peraza may be redacted. ECF No. 29 at 7. Similarly, such information that may exist in the files related to any of his family members and/or any other individuals unrelated to this law suit can also be redacted. The Court will further enter the protective order, to be filed simultaneous to this order, to apply to disclosure of the Internal Affairs file and personnel records.

### III.  CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion to compel. Within **14 days of this order**, Defendants shall produce to Plaintiff, these documents identified in Defendants' privilege log:

1) Internal Affairs File related to Plaintiff's incident (CSDP000001-000147)
2) Personnel file (CSD000206-826)

Production shall be subject to the Protective Order that the Court will file simultaneously with this order, to be applied to only these documents. The documents shall be produced in their entirety, except for any personal or private information, as specified in the Protective Order.

//
//
//
//
//
//
//
//

## JOINT MOTION TO AMEND SCHEDULING ORDER

Also before the Court is the parties' joint motion to amend the scheduling order. ECF No. 31. Because the discovery sought in this dispute may affect Plaintiff's decision whether to amend the complaint to join additional parties, the parties request an extension to the deadline to file a motion to amend the complaint. *Id.* Good cause appearing, the Court **GRANTS** the motion. The deadline to file amended pleadings is extended to **14 days after Defendants' production of the documents** ordered above.

**IT IS SO ORDERED.**

Dated: January 25, 2021

Hon. Nita L. Stormes
United States Magistrate Judge